UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |   |
|---|---|---|---|
| IN RE: APPLICATION FOR ACCESS TO VIDEO EXHIBITS | : : : : : : : | Case No.: Re Document Nos.: | 21-mc-90 (RC) 1, 6 |

**MEMORANDUM OPINION**

**GRANTING PETITIONER'S APPLICATIONS FOR ACCESS TO VIDEO AND AUDIO EXHIBITS**

**I.  INTRODUCTION**

Pending before the Court are two applications submitted on behalf of sixteen media organizations (the "Press Coalition") for access to the video and audio exhibits ("Exhibits") submitted during the pretrial detention proceedings in the criminal case *United States v. Fitzsimons*, No. 21-cr-158 (D.D.C.) ("Criminal Case").  Defendant Kyle Fitzsimons was among the hundreds of people who stormed the Capitol on January 6, 2021 to stop Congress from certifying the results of the 2020 presidential election.  Following Fitzsimons's arrest and 10-count indictment, he was ordered detained pending trial and his subsequent motion to revoke the detention order and for pretrial release was denied.  To support its request for pretrial detention and its opposition to revoke pretrial detention, the Government submitted three video recordings of Fitzsimons on January 6 and two video and audio recordings of Fitzsimons's conduct prior to, and after, January 6.  The Government agrees that the video and audio exhibits can be released. *See* Gov't Resp. to Appl. Regarding Video Ex. Release ("Gov't Resp."), Criminal Case ECF No. 31; Gov't Resp. to Min. Order Regarding Suppl. Appl. for Access to Video & Audio Exhibits ("Gov't Suppl. Resp."), Criminal Case ECF No. 41.  Defendant, however, objects to both

applications, arguing that the risk of prejudice at trial is too great. *See* Def.'s Resp. to Appl. Regarding Video Exhibit Release ("Def.'s Resp.") at 3, Criminal Case ECF No. 32; Def.'s Resp. to Suppl. Appl. for Access to Video & Audio Exhibits ("Def.'s Suppl. Resp.") ¶ 5, ECF No. 42. For the reasons below, the Court grants the Press Coalition's application.

## II.  FACTUAL BACKGROUND[1]

"Defendant Kyle Fitzsimons was among the hundreds of people who stormed the Capitol on January 6, 2021 to stop Congress from certifying the results of the 2020 presidential election." *United States v. Fitzsimons*, No. 21-cr-158, 2021 WL 4355411, at *1 (D.D.C. Sept. 24, 2021). "He was arrested at his home in Maine on February 4, 2021 and charged with a 10-count indictment on February 26, 2021." *Id.* In response to the Government's motion to detain Fitzsimons pending trial, Fitzsimons declined a pretrial detention hearing in Maine and was transported to the District of Columbia. *See id.* at *2. Following a pretrial detention hearing on April 6 and 7, 2021 before Magistrate Judge G. Michael Harvey of the U.S. District Court for the District of Columbia, Fitzsimons was ordered detained pending trial. *See id.*; 4/6/21 Detention Hr'g Tr. ("4/6/21 Tr."), Criminal Case ECF No. 19; 4/7/21 Detention Hr'g Tr. ("4/7/21 Tr.") at 25:8–23, Criminal Case ECF No. 20.

Approximately two months after the April pretrial detention hearings, the Press Coalition filed a request for access to the Exhibits that the Government submitted to the court pursuant to Standing Order No. 21-28. *See* Appl. for Access to Video Exhibits ("Appl.") ¶¶ 4–6, ECF No. 1. "The government submitted three (3) videos" as exhibits at the two April hearings which

---

[1] This background is drawn from the Government's criminal complaint, the record before Magistrate Judge Harvey, the record before this Court, the parties' briefing for the pretrial detention hearing and motion to revoke pretrial detention hearing, and the parties' briefings to the Court in support of each party's motion in the current matter. It does not represent the Court's findings of fact on the merits of the case.

"[n]either party sought a sealing order for . . . upon their submission." Gov't Resp. at 2. The exhibits[2] included video from a body-worn camera worn by a Metropolitan Police Officer ("Exhibit 7a"),[3] video surveillance from the Capitol Building ("Exhibit 7"), and a video and audio recording of a Town of Lebanon, Maine meeting that Fitzsimons called into the day after the riots to speak about his opinions of the event ("Exhibit 2").[4] *See* Gov't Mem. in Supp. Pretrial Detention ("Gov't Mot.") at 3–4, Criminal Case ECF No. 7; Gov't Opp'n Def.'s Mot. to Revoke Detention Order ("Gov't Opp'n") at 3–4, Criminal Case ECF No. 35. Additionally, the Government submitted to the court an audio recording exhibit of "a voice mail that was left by Mr. Fitzsimons to a congressional office on December 20th, 2020." 4/6/21 Tr. at 21:12–16. These Exhibits were accompanied by several screenshots from the videos in the complaint and detailed descriptions of what the Exhibits depicted in the Government's brief. *See* Statement of Facts to Compl. at 3–7, Criminal Case ECF No. 1; Gov't Mot. at 1, 3–4, 7–8, 10.

On August 27, 2021, Fitzsimons filed a Motion to Revoke the Detention Order and for Pretrial Release, which the Government opposed. *See generally* Def.'s Mot. to Revoke Detention Order & for Pretrial Release ("Def.'s Mot."), Criminal Case ECF No. 34; Gov't Opp'n. Following a hearing before this Court on September 16, 2021, Fitzsimons's motion was

---

[2] The Government numbered the Exhibits differently for the April hearings and September hearing. For clarity, the Exhibits are numbered here consistently with the Government's numbering for the September hearing.

[3] Because each pretrial detention hearing numbered the exhibits differently, this numbering corresponds to the labeling of the exhibits in the September 2021 hearing before this Court.

[4] The Government did not attach Exhibit 2 to its brief for the April 6 pretrial hearing, *see* 4/6/21 Tr. at 19:5–13, but submitted Exhibit 2 to the court for the April 7 pretrial hearing, *see* 4/7/21 Tr. at 4:7–19.

denied. *See Fitzsimons*, 2021 WL 4355411, at *8; 9/16/21 Mot. Hr'g Tr. ("9/16/21 Tr."), ECF No. 45.

After the September hearing on Fitzsimons's motion to revoke pretrial detention, the Press Coalition filed a supplemental request for access to the Exhibits that included additional exhibits the Government submitted to this Court in support of its opposition brief. *See* Suppl. Appl. for Access to Video & Audio Exhibits ("Suppl. Appl.") ¶¶ 4–6, ECF No. 6. In addition to the same exhibits the Government submitted at the April pretrial detention hearings, the Government submitted an additional video exhibit at the September hearing of a second video from another body-worn camera worn by a Metropolitan Police Officer ("Exhibit 7b") and a series of recorded jail calls. *See* 9/16/21 Tr. at 8:21–22, 21:18–24:8. The Government also accompanied these Exhibits with video screenshots, and both parties provided detailed descriptions of the Exhibits in their briefs. *See generally* Gov't Opp'n; Def.'s Mot. Neither party sought a sealing order for any of the Exhibits upon their submission at the September hearing either. *See* Gov't Suppl. Resp. at 2.

All parties relied heavily on the Exhibits during each proceeding. *See generally* 4/7/21 Tr.; 9/16/21 Tr. In addition to being extensively discussed in briefs and before the court at all three hearings, the Government also "showed excerpts of those videos" and played the audio recordings.[5] Reply Mem. Further Supp. Press Coalition's Appl. For Access to Video Exhibits ("Press Appl. Reply") at 2, ECF No. 4; *see generally* 4/6/21 Tr.; 4/7/21 Tr.; 9/16/21 Tr. Relying substantially on the Exhibits, the magistrate judge and this Court ordered Fitzsimons detained

---

[5] Due to technical difficulties during the April 6 pretrial detention hearing conducted over Zoom, the Government was unable to play Exhibit 11. *See* 4/6/21 Tr. at 21–24. However, the Government submitted Exhibit 11 to the magistrate judge for the April 7 hearing, *see* 4/7/21 Tr. at 5:23–6:5, and successfully played Exhibit 11 during the September hearing. *See* 9/16/21 Tr. at 14:12–22.

pending trial.  *See* Order of Detention Pending Trial at 2–4, Criminal Case ECF No. 36; *Fitzsimons*, 2021 WL 4355411.

### III.  LEGAL STANDARDS

"The common-law right of public access to judicial records 'is a fundamental element of the rule of law, important to maintaining the integrity and legitimacy of an independent Judicial Branch.'"  *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017)).  "Release promotes the same instrumental goals underlying the common law right: 'producing an informed and enlightened public opinion, . . . promoting the search for truth, and assuring confidence in judicial remedies.'"  *United States v. Munchel*, No. 21-cr-118, 2021 WL 4709745, at *4 (D.D.C. Oct. 8, 2021) (cleaned up) (quoting *In re Leopold*, 964 F.3d at 1127).

Courts must first establish whether the subject of an application is a "judicial record" to determine whether this important right is implicated.  *See Munchel*, 2021 WL 4709745, at *3.  "[W]hether something is a judicial record depends on the 'role it plays in the adjudicatory process.'"  *Id.* (quoting *In re Leopold*, 964 F.3d at 1128).  "[N]ot all documents filed with courts are judicial records . . . ."  *In re Leopold*, 964 F.3d at 1128 (first alteration in original).  Rather, "[d]ocuments and other materials filed in court 'intended to influence the court' are judicial records."  *United States v. Jackson*, No. 21-mj-115, 2021 WL 1026127, at *4 (D.D.C. Mar. 17, 2021) (citation omitted) (quoting *In re Leopold*, 964 F.3d at 1128).  "[E]very part of every brief filed to influence a judicial decision qualifies as a 'judicial record.'"  *USA v. James*, 21-cr-28-12, slip op. at 1, ECF No. 360 (D.D.C. Aug. 23, 2021) (quoting *League of Women Voters of U.S. v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020).

There is a "strong presumption in favor of public access" when a document is a judicial record. *In re Leopold*, 964 F.3d at 1127 (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980)). "[T]his presumption 'may be outweighed by competing interests'" by balancing the "public and private interests at stake." *In re Application for Access to Certain Sealed Video Exhibits*, -- F. Supp. 3d --, No. 21-mc-78, 2021 WL 2711706, at *3 (D.D.C. June 30, 2021) [hereinafter *In re Klein Exhibits*] (quoting *MetLife*, 865 F.3d at 665). District courts balance the competing interests by applying the "six-factor test crafted by the D.C. Circuit in *United States v. Hubbard*." *In re Klein Exhibits*, 2021 WL 2711706, at *3. This test considers:

(1) the need for public access to the documents at issue;

(2) the extent of previous public access to the documents;

(3) the fact that someone has objected to disclosure, and the identity of that person;

(4) the strength of any property and privacy interests asserted;

(5) the possibility of prejudice to those opposing disclosure; and

(6) the purposes for which the documents were introduced during judicial proceedings.

*Id.* (quoting *In re Leopold*, 964 F.3d at 1131).

### IV.  ANALYSIS

Defendant objects to the release of the Exhibits on the grounds that the risk of prejudice at trial outweighs the right of public access. *See* Def.'s Resp. at 3; Def.'s Suppl. Resp. ¶ 5. The Press Coalition and the Government agree that the *Hubbard* test weighs in favor of releasing the Exhibits pursuant to Standing Order 21-28. *See* Appl. ¶¶ 6–9; Suppl. Appl. ¶¶ 6–9; Gov't Resp.; Gov't Suppl. Resp. For the following reasons, this Court will grant the Press Coalition's application.

### A. The Video Exhibits Are Judicial Records

The Exhibits at issue are all judicial records. As mentioned above, the Government submitted and extensively discussed them in its brief to the magistrate judge to "influence a judicial decision" under the Bail Reform Act that the Defendant should be detained pending trial. *See* Gov't Mot. at 1, 3–4, 7–8, 10; Gov't Suppl. Resp. at 2. Additionally, there were detailed discussions during both pretrial detention hearings about Fitzsimons's conduct and statements that were captured in the Exhibits at precise timestamps. *See, e.g.*, 4/6/21 Tr. at 14–17; 4/7/21 Tr. at 6–9. The magistrate judge conducted a close review of the Exhibits in considering whether pretrial detention was warranted because Defendant posed a danger to the community. *See* 4/7/21 Tr. at 4:1–15, 6:3, 8:13–24, 19–20, 22–23, 25:3–12. Altogether, the parties' and Court's heavy reliance on the Exhibits in reaching that outcome demonstrates that the Exhibits "played a significant and meaningful role in the adjudicatory process." *Jackson*, 2021 WL 1026127, at *5.

To be sure, Defendant does not dispute the Press Coalition's assertion that the Exhibits qualify as "judicial records." *See, e.g.*, Def.'s Resp. at 2. Instead, Defendant objects on the grounds that "the strong likelihood of prejudice to Mr. Fitzsimons" if the videos are released to the public tilts the outcome of the six-factor *Hubbard* test in his favor. *Id*. Accordingly, the Exhibits will be analyzed as judicial records under the *Hubbard* test for purposes of determining whether prejudicial concerns outweigh the right of public access.

### B. Application of the *Hubbard* Factors

The Press Coalition claims that its application for the Video and Audio Exhibits should be granted because the "presumption of public access" weighs in its favor. Appl. ¶ 8. Through balancing the considerations of the six *Hubbard* factors, this Court finds that Defendant's

concern about the risk of prejudice does not outweigh the "strong presumption of public access" to the Exhibits. *Hubbard*, 650 F.2d at 317.

1. Need for Public Access to Video Exhibits

The first *Hubbard* factor weighs strongly in favor of public release. "The fact that the exhibits were referenced in the government's public filings may create a public need for them." *Jackson*, 2021 WL 1026127, at *6 (cleaned up) (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1410–11 (D.C. Cir. 1996)). This is because "there is an independently strong public interest in the *legal significance*" of records that are "specifically referred to in the trial judge's public decision." *Munchel*, 2021 WL 4709745, at *5 (quoting *Nat'l Children's Ctr.*, 98 F.3d at 1409).

Defendant concedes that the public has an interest in accessing content related to the January 6 events, but asserts that the Press Coalition has not sufficiently articulated its need for the four Exhibits at issue because they "will do little to further the national discussion of the events." Def.'s Suppl. Resp. ¶ 7. However, this notion is contrary to the common law right's underlying goals that are considered in this factor. Media applications to inspect and copy judicial records are not exclusively granted for video exhibits that depict events more newsworthy than those already released. Instead, these applications "have been granted where the exhibits raise 'issues of major public importance related to the conduct not only of the defendant[] but also of government law enforcement agents.'" *Jackson*, 2021 WL 1026127, at *6 (alteration in original) (quoting *In re Application of Nat'l Broad. Co.*, 653 F.2d 609, 620–621 (D.C. Cir. 1981)). Accordingly, *any* judicial records depicting "[t]he events of January 6 are 'of deep national importance,' and there is a strong public interest in seeing real-time images of what

8

happened that day." *In re Klein Exhibits*, 2021 WL 2711706, at *5 (quoting *Jackson*, 2021 WL 1026127, at *6).

Here, this factor also weighs strongly in favor of public release because the Exhibits provided the Court with significant information on the Defendant's contribution to "[t]his violent challenge to a constitutionally mandated process." *Jackson*, 2021 WL 1026127, at *6. The video exhibits informed the Court that Defendant belonged to the specific "class of cases" involving individuals engaged in "violent, assaultive conduct . . . against the various law enforcement officers in that police line" from law enforcement's perspective that day. 4/7/21 Tr. at 19:4–7, 22:4–6. The audio recordings additionally informed the Court that Fitzsimons was the "type of defendant," *Munchel*, 2021 WL 4709745, at *5, who contributed to the violence with "no remorse, no backtracking," 4/7/21 Tr. at 25:4. Due to the Exhibits' significantly informative value, the magistrate judge extensively referred to them specifically and played them during the public hearings.[6] *See* 4/6/21 Tr. at 14–23; 4/7/21 Tr. at 6–9; *see also Nat'l Children's Ctr.*, 98 F.3d at 1409 (finding a need for public access when "the documents at issue [are] . . . specifically referred to in the trial judge's public decision") (quoting *Hubbard*, 650 F.2d at 318).

Altogether, the information the Exhibits supplied the court about Fitzsimons was the basis for Magistrate Judge Harvey's thoughtful opinion that the weight of the evidence against Defendant was strong. *See* Order of Detention Pending Trial at 2–4. Therefore, releasing the videos for the public to see for itself promotes the underlying goals of the common law right of "produc[ing] an informed and enlightened public opinion" and "assur[ing] confidence in judicial remedies." *Munchel*, 2021 WL 4709745, at *4 (alterations in original) (quoting *In re Leopold*,

---

[6] While the April pretrial detention hearings were conducted over Zoom and unavailable for the public to attend in real time, the transcripts of both are publicly accessible. *See generally* 4/6/21 Tr.; 4/7/21 Tr.

9

964 F.3d at 1127).

2. Extent of Previous Public Access to Video Exhibits

The second factor also weighs in favor of public access. "Previous access has been considered relevant to a determination whether more liberal access should be granted to materials formerly properly accessible only on a limited basis through legitimate public channels and to a determination of whether further dissemination of already accessible materials can be restrained." *Jackson*, 2021 WL 1026127, at *6 (quoting *Hubbard*, 650 F.2d at 318) (internal alterations omitted). "Generally, when 'much of the critical information is already in the public forum,' this factor weighs in favor [of] greater disclosure." *Munchel*, 2021 WL 4709745, at *5 (quoting *In re Application of New York Times Co. for Access to Certain Sealed Ct. Recs.*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008).

"[L]imited prior public access" to exhibits available through public forums like court proceedings, criminal complaints, party pleadings, and court memorandum opinions weighs in favor of full disclosure. *See James*, slip op. at 4 (citing *In re Nat'l Broad. Co.*, 635 F.2d 945, 952 (2d Cir. 1980); *see also Jackson*, 2021 WL 1026127, at *6 (holding that January 6 exhibits "publicly shown at the magistrate judge detention hearing" and included in the Government's publicly available brief favored release); *In re Klein Exhibits*, 2021 WL 2711706, at *5 (holding that the second factor favored release where January 6 exhibits played during the public teleconference hearing, and discussed in counsels' public filings and the court's decisions). Transcripts of court proceedings, including those conducted over Zoom due to the COVID-19 pandemic, are also a form of prior public access favoring disclosure. *Cf. In re Nat'l Broad. Co.*, 635 F.2d at 952 ("Though the transcripts of the videotapes have already provided the public with

an opportunity to know what words were spoken, there remains a legitimate and important interest in affording members of the public their own opportunity to see and hear evidence.").

Here, the prior public access to the Exhibits from the April and the September pretrial detention hearings weighs in favor of public release. Screenshots and significant detail of all the Exhibits contained in the parties' filings and Court's decisions from both April and September hearings are publicly available online. *See generally* Def.'s Position on Gov't Mot. Pretrial Detention ("Def.'s Opp'n"), Criminal Case ECF No. 13; Order of Detention Pending Trial, Criminal Case ECF No. 36; Def.'s Mot.; Gov't Opp'n; *Fitzsimons*, 2021 WL 4355411. These Exhibits, with the addition of Exhibit 7b from police body-worn camera footage, were also either extensively discussed or publicly shown during the in-person September pretrial hearing. 9/16/21 Tr. at 5:13–7:23, 8:2–16, 8:21–9:13, 10:7–9, 14:12–25, 19:2–13, 27:17–30:16, 42:8–13, 48:7–10. Between the two hearings, the Exhibits already have a high amount of prior public access favoring their disclosure.

Admittedly, Exhibit 2 from a recording of a local town hall meeting, Exhibit 7 from surveillance videos in the Lower West Terrace tunnel entrance, Exhibits 7a and 7b from police body-worn camera footage, and Exhibit 11 of Defendant's voicemails to a federal congressional office have not been made available on the Court's docket. However, contrary to Defendant's assertion that this factor is neutral because the Exhibits' prior public access is limited to the hearings, Def.'s Resp. at 3; Def.'s Suppl. Resp. ¶ 8, this factor does not require prior public disclosure beyond the proceedings themselves to weigh favorably toward public access. *See James*, slip op. at 4. Accordingly, it is significant for this *Hubbard* factor that extensive discussion and description of the Exhibits was transcribed in the publicly accessible transcript of

the April Zoom hearings.[7]  *See* 4/6/21 Tr. at 22:8–20; 4/7/21 Tr. at 4:1–9:5.  Given the substantial extent of prior public access within the publicly accessible proceedings, this factor weighs heavily in favor of public disclosure.

### 3.   Identity of Person Objecting to Disclosure

The third *Hubbard* also factor tilts in favor of disclosure.  This factor focuses on the privacy interests of third parties, "provid[ing] broader protection from disclosure 'where a third party's property and privacy rights are at issue [and] the need for minimizing intrusion is especially great.'"  *Jackson*, 2021 WL 1026127, at *7 (quoting *Hubbard*, 650 F.2d at 319).  Here, only Defendant Fitzsimons, rather than a third party to the proceedings, objects to disclosure, "and he did so only in response to the Press Coalition's Application."  *James*, slip op. at 4; *see also* Gov't Suppl. Resp. at 4.  Because there are no third-party property or privacy rights at issue, there is no "broader protection" from disclosure triggered under this factor.  *See id.* (quoting *Hubbard*, 650 F.2d at 319–20).  Accordingly, this factor leans in favor of disclosure.

### 4.   Strength of Asserted Property and Privacy Interests Asserted

The fourth *Hubbard* factor also weighs in favor of disclosure.  This factor focuses on "the objecting party's privacy interest in the particular material at issue."  *Jackson*, 2021 WL 1026127, at *7.  "[D]isclosure is discouraged where there is a possibility of 'public humiliation and degradation' that would 'constitute an unconscionable invasion of privacy' to innocent third persons."  *Id.* (quoting *In re Application of Nat'l Broad. Co.*, 653 F.2d at 620).  Here, Defendant

---

[7] While technical difficulties during the April 6 pretrial detention hearing prevented the Government from playing the audio of the voicemail Defendant left a congressional representative prior to January 6th, *see* 4/6/21 Tr. at 21:12–25, the Government's reading of Defendant's words in the publicly available hearing transcript, *id.* at 22:5–20, the discussion of the recording in both transcripts of the April 2021 hearings, and the Government's success at playing the recording in the September hearing all nevertheless weigh in favor of public release. *See id.* at 22:5–20; 4/7/21 Tr. at 6:1–13, 8:13–19, 23:1–7; 9/16/21 Tr. at 14:12–16.

asserts no privacy interest in any of the Exhibits, nor could he "since the images of defendant were captured while he was participating very publicly with a mob assaulting the Capitol." *Id.*

Instead, Defendant contends this factor weighs in his favor because releasing the Exhibits would expose him to "public humiliation and degradation." Def.'s Suppl. Resp. ¶ 9 (quoting *In re Application Nat'l Broad Co.*, 653 F.2d at 620). However, this argument ignores the public nature of Defendant's conduct captured in the Exhibits. *See James*, slip op. at 4 (finding only a weak privacy interest where "the video clip in question depicts [the defendant's] public conduct"). Exhibits 7, 7a, and 7b capture January 6 events that "not only took place in a public setting but were also extensively captured by photographers and videographers." *See Munchel*, 2021 WL 4709745, at *6. Not only were the January 6 events public, but Defendant made no effort to shield his involvement from the public view. Rather, Exhibit 2 of a local town hall meeting and Exhibit 9 of a news media interview[8] capture Defendant publicly sharing his account of that day. *See Fitzsimons*, 2021 WL 435541, at *2, *5, *7.

While Exhibit 11 captures a voicemail message that is presumably unavailable to the general public, any weight this might give towards nondisclosure is nominal considering Defendant did not articulate a privacy right with respect to that particular exhibit nor did he seek to seal any of the exhibits during or after the hearings. *See* Gov't Suppl. Resp. at 2 (noting the failure to request sealing of exhibits); Def.'s Suppl. Resp. ¶ 9 (objecting to the release of "sensational images"). With little evidence of an invasion of privacy that would lead to reputational harm overall, this factor weighs in favor of disclosure.

---

[8] During the September pretrial detention hearing, the Government submitted quotations attributed to Fitzsimons from a news interview. Gov't Opp'n at 8–10; Exhibit 9. Although the Press Coalition's application does not seek disclosure of Exhibit 9, Defendant's intentionally public conduct reflected therein favors disclosure pursuant to Hubbard's fourth factor. *See James*, slip op. at 4.

5. Possibility of Prejudice

The fifth *Hubbard* factor tilts in favor of public release, though only slightly.  This factor considers "whether defendants' rights in this proceeding will be prejudiced by release." *Munchel*, 2021 WL 470945, at * 7 (citing *Hubbard*, 650 F.2d at 320–21; *Jackson*, 2021 WL 1026127, at *7–*8).  "The possibility of prejudice to the defendant[] by sensational disclosure is a factor which may weigh in favor of denying immediate public access."  *Hubbard*, 650 F.2d at 320–21; *see also Jackson*, 2021 WL 1026127, at *8 (same).

Defendant's position is that releasing the exhibits would taint the jury pool and deprive him of his Sixth Amendment right to a fair trial by an impartial jury.[9]  *See* Def.'s Resp. at 3; Def.'s Suppl. Resp., ¶ 5.  Specifically, Defendant contends that the exhibits contain "sensational images" that are "deliberately chosen clips to support a certain argument," increasing the risk of prejudice already present due to various mainstream media January 6 documentary releases, many of which feature Defendant.  *See* Def.'s Resp. at 3–4 (citing various January 6 articles in

---

[9] Defendant also made his Sixth Amendment fair trial argument under the third and sixth *Hubbard* factors.  *See* Def.'s Resp. at 3, 5; Def.'s Suppl. Resp. ¶¶ 8, 13.  However, this Court finds this interest is better considered here because the fifth prong "focuses on the trial rights of the defendant," *Munchel*, 2021 WL 4709745, at *6 n.2 (citing *Hubbard*, 650 F.2d at 320–21 & n.107.  Distinctly, the third prong focuses on the strength of any privacy rights asserted and the identity of those objecting to disclosure , *see Hubbard*, 650 F.2d at 320, and the sixth factor focuses on the purposes for which the exhibits in question were introduced, *see id.* at 321.

14

the media[10]); Def.'s Suppl. Resp. ¶¶ 10(a)–(c), 11 (citing various January 6 documentaries[11] and major news network articles).

Here, the "traditional method[s] of protecting defendants from the adverse effects of publicity" are capable of sufficiently guaranteeing Defendant a fair trial. *Munchel*, 2021 WL 4709745, at *7 (quoting *United States v. Criden*, 648 F.2d 814, 828 (3d Cir. 1981). The Court is equipped with many methods that can mitigate the prejudice from public notoriety, and consistently regard these tools as "adequate to protect defendants' rights." *See Munchel*, 2021 WL 4709745, at *7 (collecting cases). "[R]igorous *voir dire*" has been widely relied on as effective at mitigating such prejudice. *See, e.g.*, *Jackson*, 2021 WL 1026127, at *8 n.4; *In re Klein Exhibits*, 2021 WL 2711706, at *5; *James*, slip op. at 5. Additional measures like granting continuances or changing venue are also tools at the Court's disposal to avoid publicity prejudice. *See Munchel*, 2021 WL 4709745, at *7 (citing *In re Nat'l Broad. Co.*, 635 F.2d at 953 n.9). Indeed, Defendant's pending request for a venue change to the District of Maine reflects Defendant's faith in at least one of those traditional methods to protect his Sixth Amendment

---

[10] *See, e.g.*, Brian Stelter, *"'Assault on Democracy' explores the roots of January 6 and why it matters today*, CNN (June 20, 2021), https://www.cnn.com/2021/06/20/media/assault-on-democracy-reliable-sources/index.html (reporting Defendant's remarks at a public hearing before the Maine legislature); Katelyn Polantz, *How CNN obtained the dramatic videos of the US Capitol riot*, CNN (June 20, 2021), https://www.cnn.com/2021/06/20/politics/cnn-capitol-riot-videos/index.html (reporting Judge Sullivan's remarks about other January 6th footage); *Insurrectionist Wearing Butcher Jacket And Armed With Unstrung Bow Claims "I Was There For Peace"*, DAILY KOS (Mar. 1, 2021), https://www.dailykos.com/stories/2021/3/1/2018769/-Insurrectionist-Wearing-Butcher-Jacket-And-Armed-With-Unstrung-Bow-Claims-I-Was-There-For-Peace (calling Defendant a "racist conspiracy theorist"); Paul P. Murphy, *Capitol riot defendant has history of intimidating lawmakers, made racist speech at public hearing*, CNN (Feb. 7, 2021), https://edition.cnn.com/2021/02/07/us/capitol-riot-defendant-racist-public-hearing/index.html (referring to Defendant's speech remarks as "racist and xenophobic")..

[11] *See, e.g.*, DAY OF RAGE: HOW TRUMP SUPPORTERS TOOK THE U.S. CAPITOL (The New York Times 2021); 24 HOURS: ASSAULT ON THE CAPITOL (Hulu 2021); FOUR HOURS AT THE CAPITOL (HBO 2021).

rights. Def.'s Mot. Transfer at 25, Criminal Case ECF No. 47. In the absence of an explanation of why the traditional methods "recognized as adequate protections of defendants' rights" even in "cases involving significant public attention" would not protect Defendant here, the Court's ability to use them leans this factor in favor of public access. *Munchel*, 2021 WL 4709745, at *7.

Furthermore, Defendant's current high publicity diminishes the concern of additional prejudice. *See Munchel*, 2021 WL 4709745, at *7. "[T]he substantiality of such prejudice is informed by multiple factors, including the extent of prior public disclosure." *James*, slip op. at 5 (citing *Hubbard*, 650 F.2d at 322). As discussed above, the exhibits depicting Defendant's conduct were either publicly played at the hearings or are extensively described in publicly accessible court opinions, party filings, proceeding transcripts, and public broadcast. Accoridngly, for purposes of *Hubbard* factor five, it is significant that some of the Exhibits' depictions have already been used by the media—like the picture Defendant mentions of him "in the middle of a large group with his face covered in blood," Def.'s Suppl. Resp. ¶ 10(c); *see also* Statement of Facts to Compl. at 4; Gov't Opp'n at 7.

Arguably, releasing the full length of the video and audio recordings admitted into evidence would show more of "the whole event" than the "deliberately chosen clips" played, briefed, shown in screenshots, and discussed during the hearings that Defendant claims prejudicially show "mere moments of Mr. Fitzsimons's actions on January 6." Def.'s Resp. at 3; *cf. James*, slip op. at 5 (finding fifth *Hubbard* factor neutral where January 6 video exhibits portrayed a "narrative" that showed "some but not all of the conduct that a jury will have to consider"). Furthermore, the fact that Defendant does not contend the "narrative" depicted from the public access of the Exhibits from the proceedings is "embellished or materially inaccurate,"

*id.*, leans in favor of release considering the full context of the several articles already published that Defendant characterizes as "biased and incendiary." Def.'s Opp'n at 3. Given the vast extent of prior public disclosure of Defendant's conduct captured in the Exhibits already available, releasing the Exhibits would not likely *increase* the risk of prejudice higher than what already exists and which vigorous *voir dire* and a potential venue change could remedy. *See Munchel*, 2021 WL 470975, at *7 (finding no increased risk of prejudice releasing January 6 pretrial detention hearing exhibits of already publicly available photos and detailed court proceeding descriptions "considering previous publicity in this case").

      Defendant's reference to existing prejudice from media reports about the January 6 events in general, and reports on his other conduct separate from what the Exhibits captured, provides him no support. Def.'s Resp. at 3–4; Def.'s Suppl. Resp. ¶¶ 10(a)–(c), 11. Courts in this district have consistently been unpersuaded that the "tremendous media coverage of the January 6 events as a whole" and separate media coverage on defendants provide enough additional risk of prejudice to overcome the strong presumption of public access. *Munchel*, 2021 WL 470975, at *8 (finding *voir dire* could cure any prejudice from releasing exhibits of highly publicized January 6 defendants' pretrial detention hearing); *see also In re Klein Exhibits*, 2021 WL 2711706, at *5 (finding exhibits on a widely-reported January 6 defendant did not show the court anything "beyond what the papers and depictions in the papers have already shown" about the defendant or January 6) (internal quotations omitted); *Jackson*, 2021 WL 1026127, at *8 (finding releasing exhibits depicting January 6 defendant's violent conduct during the riots did not exacerbate any prejudice "to an extent that overcomes the presumption of public access").

17

6. The Purposes for Which Video Exhibits Submitted

Finally, the sixth *Hubbard* factor also favors release.  The Supreme Court has recognized an exception to the common law right of public access where court files are used as "a vehicle for improper purposes . . . such as to 'gratify private spite or promote public scandal.'"  *Munchel*, 2021 WL 4709745, at *8 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 588 (1978).  In line with the Supreme Court's holding, the D.C. Circuit has held that there is "a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them."  *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 85 (D.D.C. 2020).  Here, this factor weighs in favor of public release because the Government introduced the exhibits to influence the Court's decision to detain Defendant, and Defendant makes no claim they were introduced for any other purpose.  *See* Def.'s Resp. at 4–5; Def.'s Suppl. Resp. ¶ 13.

\*    \*    \*

Altogether, the six *Hubbard* factors weigh in favor of upholding the presumption of public access by granting the Press Coalition's application to access the Exhibits.  The countervailing interests Defendant raises to rebut this presumption, most notably the risk of prejudice, are insufficient to overcome this common law right.

V.  CONCLUSION

For the foregoing reasons, the Press Coalition's application is **GRANTED**.  The United States shall make available to the Press Coalition the video and audio exhibits that accompanied its criminal complaint and Memorandum in Support of Pretrial Detention, Criminal Case ECF No. 7, as well as the video and audio exhibits that accompanied its Opposition to Defendant's Motion to Revoke Detention Order and For Pretrial Release, Criminal Case ECF No. 35,

consistent with the procedures set forth in Standing Order 21-28.  Pursuant to Standing Order 21-28, the Press Coalition is granted access to these video and audio exhibits in those cases through the electronic "drop box" system created by the U.S. Attorney's Office of the District of Columbia.  "Moreover, because the right to public access includes the ability to 'inspect and copy judicial records,' and [Defendant] offers no specific objection on this point," the Press Coalition is granted permission to record, copy, download, retransmit, and otherwise further publish these video and audio exhibits.  *See In re Klein Exhibits*, 2021 WL 2711706, at *6 (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d at 665).  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 6, 2021                                           RUDOLPH CONTRERAS
                                                                   United States District Judge